UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x
David Allen, Tyree Hargroves, Lavar Hargroves, Brandon Hargroves, and Kenneth Wright,

                Plaintiffs,

       -against-

City of New York, New York City Police Department, Barry Culpepper, Police Officer Joseph Liotta, John Warner, various "John Doe" officers,

                Defendants.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**
**NOT FOR PUBLICATION**

*Lead Case*:
03-CV-1668 (DLI)(KAM)

*Consolidated Member Cases*:
03-CV-3869 (DLI)(KAM)
03-CV-5323 (DLI)(KAM)
03-CV-4646 (DLI)(KAM)

**DORA L. IRIZARRY, U.S. District Judge:**

The complaints in the above-referenced actions, now consolidated, allege that on the night of March 20, 1998, around midnight, plaintiffs were unlawfully arrested by Police Officers Barry Culpepper, Joseph Liotta, and John Warner and various unknown officers. Plaintiffs' claims, brought pursuant to 42 U.S.C. § 1983, are for false arrest, malicious prosecution, and violation of plaintiffs' equal protection rights because of alleged racial profiling.

By Memorandum and Order dated March 6, 2006 (the "3/6/06 M&O"), the court denied defendants' motion for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c), as to qualified immunity. On March 17, 2006, defendants filed a motion for reconsideration under Local Civil Rule 6.3. The court has thoroughly considered defendants' arguments. The result that defendants are not entitled to qualified immunity on the Rule 12(c) motion remains the same. Defendants' motion for reconsideration is denied.

1

**Motion for Reconsideration Standard**

The same standard governs motions for reconsideration filed under Local Civil Rule 6.3 as those filed under Fed. R. Civ. P. 59(e). *Naiman v. New York Univ. Hosps. Ctr.*, No. 95 Civ. 6469, 2005 WL 926904, at *1 (S.D.N.Y. Apr. 21, 2005). Local Civil Rule 6.3 requires the party moving for reconsideration to submit "a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked" within ten days of the court's order. "The standard for granting . . . a [reconsideration] motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data . . . that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995).

**Rule 12(c) Standard**

A Rule 12(c) motion for judgment on the pleadings is treated the same way as a Rule 12(b)(6) motion to dismiss in that the court must accept all factual allegations in the complaint as true and draw all inferences in favor of the plaintiffs. *See Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999). In addition to the factual allegations contained in the complaint, the court may look "to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Strassberg v. New York Hotel & Motel Trades Council*, No. 99 Civ. 10150, 2001 WL 103427, at *2 (S.D.N.Y. Feb. 7, 2001) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1992)).

The standard for entitlement to qualified immunity at a Rule 12(b)(6) or 12(c) motion stage

is not a liberal one. The Second Circuit has emphasized: "At this early stage of litigation, we are mindful that the district court may dismiss the complaint only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Charles W. v. Maul*, 214 F.3d 350, 357 (2d Cir. 2000) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). "This cautionary standard applies with greater force where the plaintiff alleges civil rights violations." *Kaluczky v. City of White Plains*, 57 F.3d 202, 206 (2d Cir. 1995). Additionally important in considering a Rule 12(c) motion is the pleading standard under Fed. R. Civ. P. 8(a), which only requires "a short and plain statement of the claim showing that the pleader is entitled to relief."

**The 3/6/06 M&O**

In the court's 3/6/06 M&O, defendants' motion was not denied *solely* because of uncertainties regarding the subjective intent or motivations of the arresting police officers. Nevertheless, certain points require clarification in light of defendants' reconsideration motion. For the reasons that follow, the court reaffirms its prior finding that "[p]laintiffs have at least set forth allegations challenging whether it was 'objectively reasonable' for the police officers to believe that probable cause existed." (3/6/06 M&O at 5.)

Determining whether an official is entitled to qualified immunity requires a two part analysis. The first question that must be asked is whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). Next, the court must find that the right was "clearly established," i.e., "[t]he contours of the right must be

3

sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)).

For claims that require showing a lack of probable cause, such as false arrest and malicious prosecution, it is appropriate to grant qualified immunity to individual police officers where "either (a) it was objectively reasonable for the officer[s] to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Walker v. Mendoza*, No. 00-CV-93, 2000 WL 915070, at *7 (E.D.N.Y. June 27, 1993) (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)). As enunciated by the Second Circuit, "probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Calamia v. City of New York*, 879 F.2d 1025, 1032 (2d Cir. 1989). In determining whether qualified immunity should be granted, "the objective (albeit fact-specific) question [is] whether a reasonable officer could have believed [the officers' conduct] to be lawful, in light of clearly established law and the information the . . . officers possessed." *Anderson*, 483 U.S. at 641.

Attached to the complaint, and thus available for consideration on a Rule 12(c) motion, is the decision of the Appellate Division, Second Department, in *People v. Brandon Hargroves*, 745 N.Y.S.2d 579 (2d Dep't 2002). Therein, the court reversed Brandon Hargroves' conviction and dismissed the indictment against him upon granting a motion to suppress identification testimony. The court reports the following:

The police lacked reasonable suspicion to stop and detain a group of young black

4

males, including the defendant, on the basis of the complainant's report that he had been beaten and robbed by a "group of male blacks," one of whom, the codefendant Lavar Hargroves, was wearing an orange coat or jacket. Even if the jacket worn by one member of the group that included the defendant can be considered orange rather than red and blue, this general description was not sufficient to permit the police to detain and then exhibit the defendant, among others, to the complainant. We further note that the group was walking towards the crime scene and did not flee when stopped by the police. Thus, the police lacked reasonable suspicion to stop and detain the defendant and the hearing court should have granted that branch of the omnibus motion which was to suppress the identification testimony.

*Brandon Hargroves*, 745 N.Y.S.2d at 579–80. The Second Department's dismissals of three of the other plaintiffs' indictments, also after granting their omnibus motions to suppress identification testimony, reference these details.[1] Defendants draw this court's attention to the decision of the New York Supreme Court, Queens County, denying the plaintiffs' motions to suppress, where the court found that Lavar Hargroves was wearing a jacket "that was reddish orange in color . . . [with] a navy blue patch." (Defs.' Ex. A at 6.) These are the facts available to the court at this time.

Taken in the light most favorable to the plaintiffs, the facts indicate that none of the plaintiffs may have been wearing an orange jacket, as described by the victim. The plaintiffs were walking towards the crime scene and did not attempt to avoid the police. If none of the plaintiffs was wearing an orange jacket—and thus did not fit the description given by the victim—and the police officers had no other reason to believe that plaintiffs were the perpetrators other than the fact that they were a "group of male blacks," then there are facts that plaintiffs could prove entitling them to relief against the individual defendants. Plaintiffs could prove that no reasonably competent police officer

---

[1] The Second Department's dismissals as to three of the plaintiffs' indictments do not contain any facts and instead cite the *Brandon Hargroves* decision. *See People v. Allen*, 303 A.D.2d 686 (2d Dep't 2003); *People v. Wright*, 745 N.Y.S.2d 719 (2d Dep't 2002); *People v. Lavar Hargroves*, 745 N.Y.S.2d 724 (2d Dep't 2002). As to the last plaintiff, the only factual detail contained in the dismissal is that "at the trial the complainant was unable to identify either the defendant or any of the codefendants." *People v. Tyree Hargroves*, 757 N.Y.S.2d 325 (2d Dep't 2003).

would have determined that probable cause existed and proceeded to arrest them, and a "reasonable trier of fact could find that the defendants' actions were objectively unreasonable." *See Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995). Defendants argue that the difference in opinion between the New York Supreme Court and the Second Department shows that reasonable officers could disagree on the existence of probable cause. However, as the plaintiffs correctly point out, this would mean that officers would automatically be entitled to qualified immunity on a motion to dismiss whenever a lower court decision is reversed because of a probable cause issue. Such a rule is inappropriate. Defendants' motion is denied at this stage, because plaintiffs could prove that the officers are not entitled to qualified immunity.

Contrary to what defendants claim in their motion for reconsideration, subjective intent is not wholly and categorically removed from the qualified immunity inquiry. Indeed, as has been articulated by the Second Circuit, "[t]o accept defendants' proposed approach in this case would effectively 'immunize all defendants in cases involving motive-based constitutional torts, so long as they could point to objective evidence showing that a reasonable official could have acted on legitimate grounds.'" *Locurto v. Safir*, 264 F.3d 154 (2d Cir. 2001) (quoting *Hoard v. Sizemore*, 198 F.3d 205, 218 (6th Cir. 1999)). Defendants cite *Sound Aircraft Servs., Inc. v. Town of East Hampton*, wherein the court stated: "Because the focus of the qualified immunity inquiry is on the objective reasonableness of the defendant's actions, motivation does not come into play." 192 F.3d 329, 334 (2d Cir. 1999). However, the court's focus was not on the district court's consideration of subjective intent. Instead, the Second Circuit admonished the district court for proceeding directly to finding an "issue of fact" regarding motivation and for not considering *first* whether the plaintiffs' equal protection claim had alleged a specific "clearly established" right. *See id*. ("While Sound's

6

complaint advances grievances that might bring it within the realm of the Equal Protection Clause, on remand the district court must frame the specific right allegedly violated.").

*Locurto*, on the other hand, not only is a more recent Second Circuit case but also devotes several paragraphs to explaining that a rule "that subjective intent is *per se* irrelevant to the inquiry into objective reasonableness" when considering qualified immunity on a summary judgment motion "flies in the face of Supreme Court precedent as well as [the Circuit's] own." 264 F.3d at 168–70. The fact that subjective intent may be relevant at the summary judgment motion stage further weakens defendants' argument that allegations regarding intent are irrelevant on a motion to dismiss based on qualified immunity. In *Crawford-El v. Britton*, the Supreme Court rejected requiring a heightened pleading or evidentiary standard for constitutional claims involving improper intent where defendants assert a qualified immunity defense. *See* 523 U.S. 574, 593–94, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998); *Locurto*, 264 F.3d at 169.

Two of plaintiffs' claims—malicious prosecution and violation of equal protection rights based on racial profiling—have elements of improper intent.[2] Plaintiffs have alleged the improper intent element in their complaints, including factual circumstances that the officers may have proceeded with the arrests solely because plaintiffs were a "group of male blacks." For this reason

---

[2] The elements for malicious prosecution are: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)).

A claim for selective enforcement in violation of the Equal Protection Clause requires showing the following elements: "(1) [that] the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004) (quoting *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 1999)).

7

and the reasons stated above, plaintiffs have met the pleading standard to survive defendants' 12(c) motion. *See, e.g.*, *Feliciano v. County of Suffolk*, No. 04-CV-5321, 2005 WL 2367757, at *10 (E.D.N.Y. Sept. 27, 2005) ("even if a defendant's conduct was objectively reasonable, where, as here, an unconstitutional motivation is also alleged, he may be denied the qualified immunity defense").

Accordingly, defendants cannot completely avoid discovery at this stage. "Discovery involving public officials is indeed one of the evils that *Harlow* [*v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)] aimed to address, but neither that opinion nor subsequent decisions create an immunity from *all* discovery." *Crawford-El*, 523 U.S. at 593 n.14. While the court "must exercise its discretion in a way that protects the substance of the qualified immunity defense" and "so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings," targeted discovery is necessary in situations where the plaintiffs have carried their initial burden at the pleading stage. *See id*. at 597–98.

**Defendants' Arguments**

The cases in this circuit that defendants cite in support of their argument that qualified immunity is often granted on motions to dismiss are all inapplicable. In *Charles W.*, the court did not address whether the plaintiffs' allegations concerning the reasonableness of the officers' actions were sufficient and instead granted the motion to dismiss because the plaintiffs had not alleged a due process violation, and the equal protection right plaintiffs claimed was violated was not "clearly established." 214 F.3d at 353. The same is true for *Allah v. Juchenwioz*, where the court found the "right not to snitch" was not a recognized constitutional right and certainly not "clearly established."

No. 93 Civ. 8813, 2004 WL 2389823, at *2–3 (S.D.N.Y. Oct. 26, 2004) ("Neither plaintiff's submissions nor independent research have made the Court aware of any authority in the Supreme Court or the Second Circuit recognizing the right the Court found to exist, whether based on the Constitution or on a federal statute. And, even if the Second Circuit or the Supreme Court should come to recognize such a right, that does not mean that it was clearly established in 1993.") Thus, in contrast to the instant case, in *Charles W.* and *Allah*, there were absolutely no facts alleged in the complaints that plaintiffs could prove to prevail.

In *Green v. Bauvi*, a prison inmate awaiting a disciplinary hearing, who was confined in "keeplock" and Involuntary Protective Custody housing block facilities, claimed unreasonable delay in the commencement of the hearing. 46 F.3d 189 (2d Cir. 1995). The Second Circuit found that the district court's 12(b)(6) dismissal of the correctional officers for lack of personal involvement was improper, as the complaint had sufficiently alleged that the officers "had appointed the hearing officer and had unduly delayed in making the appointment." *Id*. at 194. Here, plaintiffs have also alleged facts in their complaints that are sufficient to survive the Rule 12(c) motion. As to two other correctional officers in *Green*, the court affirmed their dismissal *not* from a 12(b)(6) standpoint but on the grounds that "subsequent undisputed evidence" showed that "summary judgment would have been appropriate." *Id*. at 195. The court affirmed the dismissal of the third correctional officer on summary judgment grounds. *Id*. These dismissals based on summary judgment grounds in *Green* are not useful comparisons to the present Rule 12(c) motion, where deference must be given to the facts alleged in the plaintiffs' complaints and where no discovery has been undertaken.

In *McLaurin v. New Rochelle Police Officers*, the court granted defendants' motion to dismiss the plaintiff's claims of false arrest, abuse of process, and malicious prosecution because of

9

specific facts alleged in the plaintiff's complaint. 373 F. Supp. 2d 385 (S.D.N.Y. 2005). As to two of the officers, the court granted the motion because of specific admissions in plaintiff's complaint that showed he did not cooperate with the police officers:

> Even viewing the facts in a light most favorable to plaintiff, it is undisputed that he did not cooperate with Officers Kornas and Falcone when they sought to arrest him. Plaintiff states in his complaint that he demanded the officers leave his apartment, refused to extinguish his cigarette when ordered to do so by Officer Falcone, participated in an altercation with the officers, grabbed for their batons, and grabbed an officer in the groin. Plaintiff even admits that he disarmed one of the police officers by taking away his baton.
>
> Given these admissions by plaintiff, I cannot say that the officers' actions were "objectively unreasonable" in light of the facts and circumstances confronting them. And, insofar as is relevant on their motion to dismiss on the ground of qualitative immunity, I certainly cannot conclude that no reasonable officer confronted with plaintiff's admitted behavior would have responded in the way that Falcone and Kornas did. The officers responded to a domestic violence complaint. Plaintiff refused to cooperate with them from the moment of their arrival. By grabbing for the officers' batons, plaintiff put the officers in a vulnerable situation. Kornas and Falcone needed to radio for backup because the situation became too much for them to handle alone. In the circumstances, reasonable police officers might well conclude that force as described in the Amended Complaint (which includes hitting the plaintiff about the neck and shoulders and wrist with a nightstick and wrestling him to the ground) was necessary in order to effect the arrest and protect themselves.

*Id*. at 392. As to a third officer, the court noted: "Although plaintiff alleges that he complied with the Detective Lornegan's orders to lie on his stomach and put his hands behind his back, no reasonable police officer could assume that plaintiff was not still a threat to further resist arrest and/or threaten the safety of the officers. Just moments before, plaintiff had wrestled the baton away from one officer and grabbed the groin of another." *Id*. at 393. The court found that the fourth officer's use of mace "was an 'objectionably reasonable' method of aiding Lornegan in effecting plaintiff's arrest without the threat of further physical aggression or resistance by plaintiff." *Id*. at 394. As to the fifth officer, the court found that it was objectively reasonable for him to believe that

10

the other officers' actions were lawful, and thus, he was entitled to qualified immunity as to allegations that he failed to intercede. *Id.* at 395.

Here, in contrast, there are no admissions by the plaintiffs that the court could construe as supporting defendants' entitlement to qualified immunity. As stated above, the facts available to the court at this time—viewed in the light most favorable to plaintiffs, as required for a 12(c) motion—adequately plead the claims plaintiffs assert. Defendants should bear in mind that, if they believe that there are no facts supporting plaintiffs' claims, summary judgment—and not a 12(b)(6) or 12(c) motion—"serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Crawford-El*, 523 U.S. at 600. Indeed, "[a]t that stage, if the defendant-official has made a properly supported motion, the plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." *Id.*

In another case cited by defendants, *Obilo v. City Univ. of City of New York*, the court found that probable cause existed where, after the College of Staten Island ("CSI") investigated a complaint of sexual assault filed against the plaintiff by a woman he alleged was his girlfriend, New York City Police Department officers reasonably relied on this investigation in effectuating the plaintiff's arrest. No. 01-CV-5118, 2003 WL 715749 (E.D.N.Y. Feb. 28, 2003).[3] While the court found that the complaint "contain[ed] no allegations that undermine[d] the veracity of the CSI officers or that allege[d] that the CSI investigation was implausible," *id.* at *9, these comments were in the context

---

[3] A corrected opinion was issued in this case. *See Obilo v. City Univ. of City of New York*, No. 01-CV-5118, 2003 WL 1809471 (E.D.N.Y. Apr. 7, 2003). However, the arguments and facts presented in the decision cited by defendants and the corrected opinion are the same.

of a clear identification by the victim, whom the plaintiff admitted he knew, *id*. at *18 (noting that "an allegation by a crime victim personally acquainted with her alleged assailant establishes probable cause").[4]  Here, in contrast, the plaintiffs allege that they did not fit the description provided by the victim—who was a stranger to them—other than the vague description that they were a "group of male blacks."  These allegations are sufficient at this time to defeat defendants' 12(c) motion.

**Conclusion**

Defendants' motion for reconsideration is denied.  The parties should proceed with limited discovery on the issue of qualified immunity.  This case is hereby referred to Magistrate Judge Kiyo Matsumoto for further proceedings.

SO ORDERED.

DATED:    Brooklyn, New York
          April 21, 2006

_____/s/_____
DORA L. IRIZARRY
United States District Judge

---

[4] It is precisely on this basis that the court also found that the CSI campus security officers had probable cause to detain plaintiff and call the New York City Police Department. *See id.* ("In this case, Martinez and Yurman responded appropriately to a report of sexual assault by a crime victim, who could not have been mistaken as to plaintiff's identity.").